**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **DANE MELGARD**, on behalf of himself and others similarly situated, | ) CASE NO. 2:20-cv-5322 |
| | ) |
| | ) JUDGE SARAH D. MORRISON |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE CHELSEY M. |
| v. | ) VASCURA |
| | ) |
| **OHIOHEALTH CORPORATION**, | ) **JOINT MOTION FOR PRELIMINARY** |
| | ) **APPROVAL OF CLASS ACTION** |
| Defendant. | ) **SETTLEMENT** |

## I.  INTRODUCTION

Plaintiff Dane Melgard ("Representative Plaintiff"), on behalf of himself and the members of the proposed settlement class ("Class Members")[1], and OhioHealth Corporation ("Defendant") respectfully move this Court to preliminarily approve the Class Action Settlement Agreement ("Agreement" or "Settlement") between Representative Plaintiff and Defendant pursuant to Federal Rule of Civil Procedure 23(e).

In support of this Joint Motion, Representative Plaintiff and Defendant submit the following exhibits:

**Exhibit A**:    Joint Stipulation of Settlement and Release (and exhibits)

**Exhibit B**:    Declaration of Adam C. Gedling

**Exhibit C**:    Proposed Preliminary Order Approving Class Action Settlement

Representative Plaintiff and Defendant respectfully request that the Court enter the Proposed Preliminary Order Approving Class Action Settlement Agreement, attached as **Exhibit C**, and:

- Certify the following class under Rule 23: "[C]urrent and former protective

---

[1] Class Members is inclusive of all Opt-In Plaintiffs.

services officers of OhioHealth Corporation at any of its locations beginning November 10, 2017 to March 21, 2022, who worked forty (40) or more hours in at least one (1) workweek. (the 'Rule 23 Class Members')";

- Preliminarily approve the Settlement pursuant to Rule 23;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the service payments to Representative Plaintiff and Opt-In Plaintiffs Keith Breeckner and Colt Moore;

- Designate Attorneys Matthew J.P. Coffman, Adam C. Gedling, and Kelsie N. Hendren of Coffman Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses; and

- Schedule a Fairness Hearing approximately 120 days after preliminary approval.

## II.   FACTS

### A.   Summary of the Claims, Defenses, and Procedural History

On October 8, 2020, Representative Plaintiff filed this collective and class action lawsuit (the "Action") under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFSWA"). ECF No. 1. In the Action, Representative Plaintiff seeks to represent the following individuals: "All current or former protective services officer of OhioHealth Corporation at any of its locations beginning November 10, 2017 to March 21, 2022 who worked forty (40) or more hours in at least one (1) workweek." Joint Stipulation to Pre-Discovery Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 20 U.S.C. §216(b), ECF No. 9.

In the Action, Representative Plaintiff alleges that Defendant failed to pay him and the Class Members all overtime compensation owed. Specifically, Representative Plaintiff alleges that Defendant failed to pay Representative Plaintiff and other similarly situated employees (here, protective services officers) for all hours worked, including but not limited to overtime for alleged

"donning and doffing" time, time not compensated based on alleged improper rounding, and other allegedly uncompensated time in violation of the FLSA and the OMFWSA. Declaration of Adam C. Gedling (hereinafter "Gedling Decl."), Ex. B, ¶ 13.

Defendant vigorously denies liability and disputes the damages asserted by Representative Plaintiff.

Following the Parties' stipulation to conditional certification, notice was issued, and fifteen (15) individuals ("Opt-In Plaintiffs") joined this action by signing and filing consent forms. The Parties also exchanged written discovery. The Parties subsequently scheduled a mediation with well-respected mediator Michael Ungar for January 7, 2022. *Id.*, ¶ 15.

As part of their agreement to mediate, Defendant agreed to produce payroll and timekeeping records for all Class Members. *Id.*, ¶ 16.

**B. Negotiation of the Settlement**

Class Counsel retained the services of a consultant to construct a damages model using the data produced by Defendant. *Id.*, ¶ 17.

After completion and analysis of the damages model, the Parties attended mediation with Mr. Ungar. The Parties were not able to reach a resolution at the mediation. However, in the following months, the Parties continued to negotiate and, with the assistance of Mr. Ungar, reached an agreement to settle the Action. The Settlement includes all Class Members who do not opt out from the same. *Id.*, ¶¶ 18-19.

**C. Summary of the Key Settlement Terms**

The total settlement fund is $470,000.00. This amount includes: (a) all individual payments to the Class Members who do not opt out of the Settlement; (b) service awards to Representative Plaintiff and Opt-In Plaintiffs Keith Breeckner and Colt Moore; (c) Class Counsel's attorneys' fees

and litigation expenses; (d) Defendant's share of employment taxes in the approximate amount of $16,700; and (e) the cost of settlement administration in the approximate amount of $13,233. *Id.*, ¶ 20. Further, in or around May 2022, Defendant changed its timekeeping polices from a time punch rounding practice to paying to the punch (i.e., paying to the exact minute). Defendant also ensured clarity regarding its policy or practice that all protective gear should be donned and doffed on the clock. These modifications provide an additional benefit to the Class Members.

Upon preliminary approval, the Notice of Class Action Settlement, attached as **Exhibit 1** to the Agreement, will be distributed to the Class Members, providing them with an opportunity to opt out or object to the Settlement as well as an opportunity to join the FLSA settlement[2] by signing and returning a Consent and Release Form. Class Members will have sixty (60) days to opt out of the Rule 23 Settlement, object to the Rule 23 Settlement, or join the FLSA settlement. *Id.*, ¶ 22. Representative Plaintiff and Opt-In Plaintiffs have already joined the FLSA settlement by previously signing and filing their respective consent forms.

Under the terms of the Settlement, Class Counsel will be paid one-third (1/3) of the total settlement fund for their attorneys' fees and will be reimbursed for their litigation expenses. In addition, Representative Plaintiff will be paid a service award of $7,500, and Opt-In Plaintiffs Keith Breeckner and Colt Moore will each be paid a service award in the amount of $1,500. Finally, the cost of settlement administration, which is estimated to be $13,233, will also be paid out of the total settlement fund. *Id.*, ¶¶ 25–26, 32.

From the total settlement fund of $470,000.00, approximately $262,779.32 ("Net Settlement Fund") will be available for individual payments to the Class Members. Each Class

---

[2] The FLSA Settlement will be submitted for final Court approval with the submission of the Joint Motion for Certification of the Settlement Class and Final Approval of Class Action Settlement.

Member's individual payment from the Net Settlement Fund has been calculated by Class Counsel and is based on an analysis of each Class Member's time punches to determine their respective damages as a result of the claimed rounding violation. The individual payments reflect approximately 85% of each Class Member's calculated overtime rounding damages for every workweek they were employed by Defendant during the period of November 10, 2017 to March 21, 2022. Class Members will receive a minimum payment of $5.00 (gross) if their individual payment does not exceed $5.00. Gedling Decl., Ex. B, ¶¶ 23–24.

Class Members who do not opt out of the Settlement but also do not timely return a signed Consent and Release Form ("Rule 23 Class Members") will receive 50% of their calculated individual payment, which will be paid as unpaid wages ("Individual Wage Payment"). Class Members who do not opt out of the Settlement but do return a signed Consent and Release Form ("Opt-In Plaintiffs") will receive 100% of their calculated individual payment, and the additional 50% will be paid as liquidated damages ("Individual Liquidated Damages Payment"). Instead of reverting back to Defendant, the unclaimed damages resulting from individuals who opt-out of the Rule 23 Settlement or who do not join the FLSA Settlement will be redistributed to the Class Members or Opt-In Plaintiffs respectively on a pro rata basis based on the formula used to calculate the individual payments. *Id.*

All Opt-In Plaintiffs who timely return the Consent and Release Form will waive their claims under the federal and Ohio wage and hour laws. Class Members who do not timely return a signed Consent and Release Form will only receive their Individual Wage Payment and will only waive their claims under the Ohio wage and hour laws. *Id.*

## III.     PRELIMINARY APPROVAL IS APPROPRIATE IN THIS CASE.

The Settlement is subject to approval by the Court pursuant to Federal Rule of Civil

Procedure 23. Courts in the Sixth Circuit use a three-step process for approving class action settlements. *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio Feb. 22, 2021) (Newman, J.). The first step requires the court to preliminarily approve the class action settlement. *Id.* The second step requires that notice of the class action settlement be issued to the proposed settlement class members. *Id.* The third step requires the court to holding a fairness hearing and decide whether to grant final approval of the class action settlement. *Id.* Currently, the Parties request that the Court preliminarily approve the Settlement under step one.

At step one, the Court must ensure that the proposed settlement class outlined in the Settlement satisfies the certification requirements of Rule 23(a) and (b)(3).[3] Then, the Court must ensure that the Settlement meets the requirements of Rule 23(e). Lastly, the Court must ensure that settlement distributions are fair, reasonable, and adequate. As discussed below, all of these requirements are met here.

### A. The Proposed Settlement Class Satisfies the Certification Requirements of Rule 23(a).

In the Settlement, the Parties have agreed to certification of the proposed settlement class:

> All current or former protective services officer of OhioHealth Corporation at any of its locations beginning November 10, 2017 to March 21, 2022 who worked forty (40) or more hours in at least one (1) workweek.

In total, the proposed settlement class (including Representative Plaintiff and Opt-In Plaintiffs) includes 368 individuals. Gedling Decl., Ex. B, ¶ 21.

Under Rule 23, a class action may be maintained if the following requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ.

---

[3] When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any of the three conditions set forth in Rule 23(b). The Parties are requesting that the Court certify the proposed settlement class under Rule 23(b)(3).

P. 23(a). All four elements are satisfied here.

        1.    *The numerosity requirement of Rule 23(a)(1) is met.*

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (Black, J.) (internal quotation marks omitted). This requirement is met upon a showing that joinder would be difficult and inconvenient. *Id.* Numerosity is easily satisfied here because the proposed settlement class includes 368 individuals. *See, e.g.*, *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (generally accepting that a class size of 40 or more is sufficient to meet the numerosity requirement).

        2.    *The commonality requirement of Rule 23(a)(2) is met.*

Commonality under Rule 23(a)(2) "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Swigart*, 288 F.R.D. at 183 (citing *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (internal quotation marks and citation omitted).

In this case, the legal issue that links the Class Members—whether they were unlawfully denied overtime compensation as a result of Defendant's alleged failure to pay for donning and doffing protective equipment and improper rounding—is undoubtedly "substantially related to the resolution of the litigation." Accordingly, the commonality requirement is met.

        3.    *The typicality requirement of Rule 23(a)(3) is met.*

The typicality requirement under Rule 23(a)(3) is satisfied when claims of the proposed class representative are typical of the claims of the class. *Swigart*, 288 F.R.D. at 185 (internal

quotation marks omitted). Commonality and typicality "are separate and distinct requirements" but "tend to merge" and "are often discussed together." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). "A proposed class representative's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and the claims are based on the same legal theory.'" *Swigart*, 288 F.R.D. at 185 (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)). The Sixth Circuit has described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, typicality exists because Representative Plaintiff's and the Class Members' claims arise out of Defendant's same alleged course of conduct: its failure to pay Representative Plaintiff and the Class Members overtime compensation based on its failure to pay for donning and doffing protective equipment and improper rounding.

4. *The adequacy of representation requirement of Rule 23(a)(4) is met.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is accompanied by a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185–86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). In other words, "Rule 23(a)(4) tests the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Id.* at 186 (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977)).

Both prongs of Rule 23(a)(4)'s adequacy requirement are satisfied. First, as explained above, Representative Plaintiff's claims against Defendant are based on the same alleged unlawful policies that affects the Class Members. Representative Plaintiff is seeking the same relief as would the Class Members: unpaid overtime compensation. Thus, Representative Plaintiff's interests are aligned with those interests of the Class Members. Moreover, Representative Plaintiff is willing and able to fulfill his duties as the class representative. He has been actively involved in the prosecution of this case and was instrumental in the Parties reaching the present Settlement. Gedling Decl., Ex. B, ¶ 25.

Second, Class Counsel is qualified and able to conduct this litigation on behalf of the proposed settlement class. Collectively, Class Counsel has litigated hundreds of wage and hour cases in federal courts around the country. *Id.*, ¶ 9. Class Counsel has actively and vigorously pursued the claims in this case. Class Counsel has committed, and will continue to commit, the resources necessary to seeing this case to its conclusion.

**B.**    **The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3).**

Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, Rule 23(b)(3) contains two requirements: predominance and superiority.

1.    *The predominance requirement of Rule 23(b)(3) is met.*

The predominance requirement examines "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Put differently, the predominance requirement is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501

F.3d 592, 619 (6th Cir. 2007).

In this case, the proposed settlement class satisfies the Rule 23(b)(3) predominance requirement because all of the Class Members share a common set of core, predominant alleged facts and legal issues, including (a) whether Defendant failed to pay the Class Members for time spent donning and doffing protective equipment; (b) whether Defendant applied an improper rounding policy; (c) whether Representative Plaintiff and the Class Members worked overtime and how much overtime they worked; and (d) whether Representative Plaintiff and the Class Members were denied overtime compensation as a result of these alleged pay policies and practices.

2.  *The superiority requirement of Rule 23(b)(3) is met.*

The superiority requirement examines whether a class action is superior to other available methods for the fair and efficient adjudication of the dispute and lists four factors for courts to consider: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3). Each factor weighs in favor of certification.

First, there is no evidence that the proposed settlement class members have any interest in maintaining this litigation in separate actions. Second, the Parties are not aware of other pending litigation against Defendant involving the proposed settlement Class Members. Third, the benefits of concentrating the claims in this Court through the class action mechanism are evident because Defendant consents to the Court's jurisdiction and many of Defendant's witnesses are located in this district. Finally, the manageability factor is automatically satisfied when a case is being certified for settlement purposes. *See Amchem Prods.*, 521 U.S. at 620.

Moreover, efficiency favors concentrating the claims in this Court. A final resolution of Defendant's liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action. Class certification here promotes consistent results, giving Defendant "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

### C. The Notice of Class Action Settlement Meets the Requirements of Rule 23(e) and Due Process.

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 F. App'x 364, 367 (6th Cir. 2009) (internal quotation marks omitted). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is also required by due process. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (emphasis in original) (citing *DeJulius*, 429 F.3d at 944); *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110–11 (10th Cir. 2001); *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994). The issue is not whether all class members received notice but rather "whether the class as a whole had notice adequate to flush out whatever objections might

reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. Int'l House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172–77 (1974)).

In this case, the Notice of Class Action Settlement will be sent to the Class Members by First-Class U.S. Mail using the addresses shown in Defendant's records.

### D. **The Settlement is Fair, Reasonable, and Adequate under Rule 23(e).**

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under the seven-factor standard discussed below. *Gen. Motors Corp.*, 497 F.3d at 626 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *Williams v. Vukovich,* 720 F.2d 909, 922–23 (6th Cir. 1983)). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and they lend themselves readily to compromise. 4 Newberg on Class Actions § 11.41 (4th ed. 2007) (collecting cases). Therefore, when considering the below factors, courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145–46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *accord Sweet v. Gen. Tire & Rubber Co.*, No. C75-181A, 1982 WL 278, at *5 (N.D. Ohio Mar. 17, 1982).

The seven (7) factors used by the Sixth Circuit to evaluate class action settlements are as

follows:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Gen. Motors Corp.*, 497 F.3d at 626 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983)). In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments . . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Gen. Motors Corp.*, 497 F.3d at 632. As discussed below, each of these factors supports preliminary approval here.

      1.    *No indicia of fraud or collision exists.*

There was no fraud or collusion in reaching the Settlement. "[C]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 WL 4913678, at *3 (N.D. Ohio Oct. 10, 2018) (internal quotation marks and further citation omitted). All settlement negotiations were extensive and conducted fairly, at arm's-length, and with the assistance of an experienced mediator and only occurred after the exchange and rigorous analysis of the relevant case law and pay data. Gedling Decl., Ex. B, ¶ 27; *see Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (stating that arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements). Both Parties' Counsel, who are experienced in wage and hour class and collective actions, support the settlement as fair and reasonable, and all certify that it was reached through arm's-length negotiations. Gedling Decl., Ex. B, ¶ 28.

      2.    *The complexity, expense, and likely duration of continued litigation favor approval.*

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Wage and hour class and collective actions are expensive and time-consuming. *See Satterly v. Airstream, Inc*., No. 3:19-cv-32, 2020 WL 6536342, at *5 (S.D. Ohio Sept. 25, 2020) (Rice, J.) ("From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) (Rice, J.).

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted litigation. The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently and amplifies the benefits of that relief through the economies of class resolution. Gedling Decl., Ex. B, ¶¶ 30–31.

3.   *Investigation was sufficient to allow the Parties to act intelligently.*

To confirm that Representative Plaintiff and the Class Members "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the Parties. *Satterly*, 2020 WL 6536342, at *5 (internal quotation marks omitted); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Satterly*, 2020 WL 6536342, at *5 (internal citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (internal citations

omitted); *Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) (internal citations omitted) (quoting same), *report and recommendation adopted*, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *3 (S.D. Ohio Oct. 3, 2018) (stating that while the parties had not reached conducting depositions, that "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

The Parties engaged in substantial investigation prior to negotiating the Settlement and attending mediation, including written discovery, and Defendant produced the payroll and other wage data required for Class Counsel to construct a proper damages model. In addition, the legal issues in this case were thoroughly researched and debated by the Parties. Gedling Decl., Ex. B, ¶¶ 16–18.

### 4. *The risks of litigation and uncertainty of recovery favor approval.*

Counsel for both sides believes in the merits of their respective client's positions but nonetheless recognizes that litigation of these types of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raised affirmative defenses to the claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

The possible recovery is also open to dispute. Even if Representative Plaintiff proves liability, the amount of recovery is uncertain and something upon which the Parties continue to disagree. Gedling Decl., Ex. B, ¶ 29.

### 5. *Experienced counsel's views favor approval.*

The recommendation of Class Counsel, skilled in class actions, that the Court should approve the Settlement is entitled to deference. *Satterly*, 2020 WL 6536342, at *7; *see also*

*Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) (Frost, J.) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

The Parties' Counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement. The Parties' Counsel supports the Settlement Agreement as fair and reasonable and in the best interest of the Class Members. Gedling Decl., Ex. B, ¶¶ 8–9, 27–28.

6. *The reaction of absent class members cannot be assessed until after notice is issued.*

There has not yet been an opportunity to gauge the reaction of absent Class Members because class notice of the Settlement has not yet been issued. The Parties are of the opinion that this factor will likely favor approval because none of the Parties, their respective Counsel, nor any person on their behalf shall seek to solicit or otherwise encourage anyone to object to the Settlement, appeal from any order of the Court that is consistent with the terms of the Settlement, or discourage participation in the settlement claims process. This issue can be reexamined in the motion for final approval and certification.

7. *The public interest favors settlement.*

Approval of a fair and reasonable settlement agreement promotes the public's interest in encouraging settlement of litigation. *Satterly*, 2020 WL 6536342, at *6; *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 WL 2853619, at *4 (N.D. Ohio May 16, 2016); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *9 (quoting *Lynn's*

*Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982)). Indeed, the "[t]ouchstone for final approval is the effect on the class *as a whole* in light of the particular circumstances, which include the public policy encouraging comprehensive settlement of class actions and multi-party litigation." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 WL 780512, at *11 (E.D. Mich. Dec. 20, 1996) (emphasis in original). Accordingly, resolving the present matter through settlement serves the public interest by providing fair and efficient payments to the Class Members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both Parties face through the litigation process.

### E.     The Settlement Distributions Are Fair, Reasonable, and Adequate.

As a part of the scrutiny it applies to a wage and hour settlement, "it is a court's responsibility to ensure that the distribution of the settlement proceeds is equitable." *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2009 WL 10715595, at *9 (N.D. Ohio Aug. 10, 2009) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). In the present case, the Settlement provides that the total settlement amount will be distributed as follows: (a) individual payments to the Class Members who do not opt out of the Settlement; (b) service awards to Representative Plaintiff and Opt-In Plaintiffs Keith Breeckner and Colt Moore; (c) Class Counsel's attorneys' fees and litigation expenses; (d) Defendant's share of employment taxes in the approximate amount of $16,700; and (e) the cost of settlement administration in the approximate amount of $13,233.

As discussed below, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for Representative Plaintiff and the Class Members.

#### 1.     *The individual payments are reasonable and adequate.*

From the total settlement amount of $470,000.00, approximately $262,779.32 ("Net

Settlement Fund") will be available for individual payments to the Class Members. Each Class Member's individual payment from the Net Settlement Fund has been calculated by Class Counsel and is based on an analysis of each Class Member's time punches to determine their respective damages as a result of the claimed rounding violation. Each Eligible Settlement Participant has the opportunity to receive an individual payment that reflect approximately 85% of each their calculated overtime rounding damages for every workweek they were employed by Defendant during the period of November 10, 2017 to March 21, 2022. Gedling Decl., Ex. B, ¶¶ 23–24.

Class Members, who do not timely return a signed Consent and Release Form will receive 50% of their calculated individual payment, which will be paid as unpaid wages ("Individual Wage Payment"). Opt-In Plaintiffs are Class Members who have also returned a signed Consent and Release Form. Opt-In Plaintiffs will receive 100% of their calculated individual payment, which will be paid as liquidated damages ("Individual Liquidated Damages Payment"). Instead of reverting back to Defendant, any remaining Individual Wage Payments allocated to Eligible Settlement Participants who opt-out of the Rule 23 Settlement will be distributed to Class Members on a pro rata basis using the same formula to compute the individual payments. In addition, any remaining Individual Liquidated Damages Payments allocated to Eligible Settlement Participants who do not timely opt-in to the FLSA Settlement will be distributed to Opt-In Plaintiffs. Class Members will receive a minimum payment of $5.00 (gross) if their individual payment does not exceed $5.00.

This Court and another district court within the Sixth Circuit have found that individual payments exceeding the typical recovery of seven percent (7%) to eleven percent (11%) are exceptional. *See Smith v. SAC Wireless, LLC*, No. 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL

776933, at *8 (N.D. Ohio Mar. 8, 2010)) (finding a recovery to be "fair and reasonable" where it "greatly exceed[ed] the typical 7-11% recovery in FLSA cases[]"); *see also Yorba v. Barrington Sch., LLC*, No. 2:21-cv-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022) (Sargus, J.) (discussing *Smith*, 2022 WL 1744785, at *3) (referencing the same typical recovery of 7-11% in FLSA cases). Considering that approximately a 7-11% recovery is "typical" for FLSA cases, then, a recovery in this case of at least approximately 85% can similarly be regarded as an exceptional result for the Class Members. Further, Class Members who do not become Opt-In Plaintiffs will still receive an individual payment that represents approximately 42% of their calculated overtime rounding damages.

In short, if approved by the Court, the Settlement will provide substantial payments to Representative Plaintiff and the Class Members for unpaid overtime compensation, and it is Class Counsel's opinion that the settlement is fair and reasonable.

2. *The service awards are proper and reasonable.*

The Settlement provides for a service award of $7,500 to Representative Plaintiff and $1,500 each to Opt-In Plaintiffs Keith Breeckner and Colt Moore. Courts routinely approve service awards in class and collective action litigation because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth*, 2010 WL 776933, at *7 (internal quotation marks and further citation omitted).

In this Circuit, service awards are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such

as by actively reviewing the case and advising counsel in the prosecution of the case." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (Weber, J.); *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (Smith, J.) (explaining that among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

The proposed service awards set forth in the Agreement are within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See, e.g.*, *Satterly*, 2020 WL 6536342, at *9 (awarding the representative plaintiffs payments in various amounts from $2,500 to $15,000); *Al-Sabur v. ADS Alliance Data Sys., Inc.*, No. 2:18-cv-957, Dkt. No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) (granting a $10,000 service award to the named plaintiff); *Brandenburg*, 2019 WL 6310376, at *8 (granting a $10,000 service award to the named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (granting a $10,000 service award to the named plaintiff); *Swigart*, No. 1:11-cv-88, 2014 WL 3447947, at *7, *8 (S.D. Ohio July 11, 2014) (Black, J.) (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 WL 2295880, at *1 (S.D. Ohio May 24, 2013) (Marbley, J.) (awarding $12,500 service award).

Representative Plaintiff and Opt-In Plaintiffs Keith Breeckner and Colt Moore spent significant time assisting Class Counsel in their investigation and prosecution of this case. In addition, Representative Plaintiff attached his named to a publicly filed lawsuit against his former employer, and Opt-In Plaintiffs Keith Breeckner and Colt Moore were named in Plaintiff's First Amended Complaint, which led to the Parties scheduling a mediation and reaching a settlement.[4] *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (further citation omitted) (stating that in one case, a court approved a service award within an FLSA case because the plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting"). As such, the time and efforts that Representative Plaintiff and Opt-In Plaintiffs all provided supports the requested service awards. Gedling Decl., Ex. B, ¶ 25.

3.   *The attorneys' fees and expenses to Class Counsel are proper and reasonable.*

After the Court has confirmed that the terms of Settlement are fair to the Class Members, it may review the Agreement as to the provision of attorneys' fees and litigation expenses to Class Counsel. The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances" and thus "encourage[s] the

---

[4] Representative Plaintiff filed a Motion for Leave to File First Amended Collective and Class Action Complaint for Violations of the Fair Labor Standards Act and Ohio Law, ECF No. 31, which requested that the Court grant Representative Plaintiff leave to file a First Amended Complaint, ECF No. 31-1, naming Representative Plaintiff and Opt-In Plaintiffs Keith Breeckner and Colt Moore as the Named Plaintiffs. The Court denied this motion without prejudice and ordered Representative Plaintiff to re-file. ECF No. 38. Prior to re-filing, the Parties' continued discussions resulted in the present Settlement.

vindication of congressionally identified policies and rights." 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

In this case, the Settlement provides that Class Counsel receive one-third (1/3) of the total settlement amount as payment for their attorneys' fees. "This Court has regularly approved attorneys' fees of 1/3 of the settlement fund in wage and hour cases." *Rawlings v. BMW Financial Services NA, LLC*, 2022 WL 2965294 at *7 (S.D. Ohio July 27, 2022); *See, e.g., O'Neil v. Miller Pipeline, LLC*, No. 2:20-cv-4034, 2021 WL 5376235, at *2 (S.D. Ohio Nov. 2, 2021) (finding attorneys' fees representing approximately one-third of the total settlement fund as reasonable); *Croskey v. Hogan Servs., Inc.*, No. 2:20-cv-3062, 2021 WL 3012278, at *2 (S.D. Ohio July 15, 2021) (further citation omitted) ("[A]ttorneys' fees ... represent[ing] one-third of the total settlement amount ... are reasonable."); *Satterly*, 2020 WL 6536342, at *10 (collecting cases) ("Federal jurisprudence within the Sixth Circuit, including this Court, hold that 1/3 of the settlement fund is a 'normal fee amount in a wage and hour case.' "); *Campbell v. Wise Med. Staffing, Inc.*, No. 2:18-CV-493, 2020 WL 9259704, at *2 (S.D. Ohio Feb. 21, 2020) ("The Court ... finds that **one-third** of the Settlement Fund is a reasonable percentage of the fund to be awarded for attorney's fees.").

Further, a one-third fee is "typical for attorney's fees in a common fund" for wage and hour litigation in this District. *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *4–8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.). In fact, the "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Id.* at *4 (quoting *Swigart*, 2014 WL 3447947, at *5). This requested attorneys' fee amount "is a

normal fee amount in a wage and hour case." *Brandenburg*, 2019 WL 6310376, at *5 (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 5023950, at *4 (N.D. Ohio July 27, 2018)); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-355, 2021 WL 1966062, at *5–7 (S.D. Ohio May 17, 2021) (Rice, J.).

"Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246, at *5 (S.D. Ohio Feb. 16, 2021) (Marbley, C.J.). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[]." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) (Marbley, J.). This Court has awarded class counsel a one-third (1/3) fee in similar cases. *See, e.g.*, *Mulledy v. Am. Air Furnace Co.*, 2:20-cv-5185 (S.D. Ohio Apr. 13, 2021); *Bailey v. Black Tie Mgmt. Co.*, 2:19-cv-1677, 2020 WL 4673163, at *5 (S.D. Ohio Aug. 12, 2020) (Sargus, J.).

Class Counsel accepted this case on a contingency fee basis and advanced all litigation expenses. Gedling Decl., Ex. B, ¶ 32. "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs., Inc.*, No. 2:15-cv-2959, 2019 WL 6485159, at *7 (S.D. Ohio Dec. 3, 2019) (Vascura, M.J.) (further citation omitted); *see also Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *5 (N.D. Ohio Mar. 26, 2019) (further citation omitted) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk"). In addition, this Court has considered the benefit of non-monetary value rendered by counsel to the

putative class members, such as changes to employers' policies and practices. *See*, e.g. *Funk v. Airstream, Inc.*, 2019 WL 4599816 at *6 (S.D. Ohio Sep. 23, 2019)[5].

Finally, courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *E.g.*, *Barnes*, 2019 WL 1614822, at *6. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third (1/3) of the total settlement amount appropriately compensates Class Counsel for its prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g.*, *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011) (Black, J.) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

The Agreement also provides that Class Counsel will be reimbursed for its out-of-pocket expenses. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 WL 6310376, at *7. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

In the prosecution of this case, Class Counsel incurred out-of-pocket expenses in the amount of $10,121.01. Gedling Decl., Ex. B, ¶ 26. Because these expenses are reasonable and were incurred in the prosecution of the claims in this case, the Court should preliminarily award Class Counsel reimbursement of these costs and expenses from the total settlement fund. Finally, the Court should preliminarily approve payment from the total settlement fund to Analytics

---

[5] While Defendant does not oppose the requested attorneys' fees for Class Counsel, Defendant does not join in this statement, and Defendant expressly denies that it modified its payroll and timekeeping policies as a result of this lawsuit.

Consulting, LLC in the amount of $13,233.00 for settlement administration costs. *Id.*, ¶ 32.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate and thus grant preliminary approval under Rule 23(e).

## IV.    PROPRIETY OF FLSA APPROVAL OF THE SETTLEMENT

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA, and it will be submitted for FLSA approval when it is submitted for final approval under Rule 23(e). At this time, the Parties simply request that the Court approve their Notice, Consent and Release Forms, and plan for distribution.

## V.    CONCLUSION

Representative Plaintiff and Defendant respectfully request that the Court enter the Proposed Preliminary Order Approving Class Action Settlement Agreement, attached as **Exhibit C**, and:

- Certify the following class under Rule 23: "current and former protective services officers of OhioHealth Corporation at any of its locations beginning November 10, 2017 to March 21, 2022, who worked forty (40) or more hours in at least one (1) workweek.";

- Approve the Parties' plan for distribution of the Notice of Settlement of Lawsuit and Consent and Release Form;

- Preliminarily approve the Settlement pursuant to Rule 23;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the Service Awards to Representative Plaintiff and Opt-In Plaintiffs Keith Breeckner and Colt Moore;

- Designate Matthew J.P. Coffman, Adam C. Gedling, and Kelsie N. Hendren of Coffman Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation

expenses; and

- Schedule a Fairness Hearing approximately 120 days after preliminary approval.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

/s/ *Adam C. Gedling*

Matthew J.P. Coffman (0085586)
Adam C. Gedling (0085256)
Kelsie N. Hendren (100041)
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Telephone: (614) 949-1181
Facsimile: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com
      agedling@mcoffmanlegal.com
      khendren@mcoffmanlegal.com

*Attorneys for Representative Plaintiff and those similarly situated*

**BAKER & HOSTETLER LLP**

/s/ *Samuel E. Endicott*

M. J. Asensio (0030777), Trial Attorney
Samuel E. Endicott (0094026)
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone: (614) 228-1541
Email: masensio@bakerlaw.com
      sendicott@bakerlaw.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on this 5th day of April 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Adam C. Gedling*
Adam C. Gedling
*Counsel for Plaintiff*