**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **DANE MELGARD** on behalf of himself and others similarly situated, | : : : |
| Plaintiff, | : **CASE NO. 2:20-cv-5322** : |
| v. | : **JUDGE SARAH D. MORRISON** : : |
| **OHIOHEALTH CORPORATION**, | : **MAGISTRATE JUDGE CHELSEY M. VASCURA** : |
| Defendant. | : : |

**ORDER GRANTING THE PARTIES' JOINT MOTION FOR FINAL APPROVAL**

The matter before the Court is the Joint Motion for Certification of the Settlement Class and Final Approval of Class Action Settlement ("Joint Motion for Final Approval").[1] For the reasons set forth below, the Court **GRANTS** the Motion.

**I.     Background**

On October 8, 2020, Representative Plaintiff Dane Melgard ("Plaintiff" or "Representative Plaintiff"), on behalf of himself and those similarly situated, filed his Collective and Class Action Complaint (the "Action"). In the Action, Representative Plaintiff brought claims against Defendant OhioHealth Corporation ("Defendant") on behalf of himself and others similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19; the Ohio Minimum Fair Wage Standards Act "(OMFWSA"), O.R.C. §§ 4111.01, 4111.03, and 4111.10; and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15.[2] In addition to Plaintiff, a total of approximately 112 current/former employees opted in to this lawsuit.

Plaintiff's Complaint alleged that he and other similarly situated protective service officers

---

[1] ECF No. 63.
[2] ECF No. 1.

who worked for Defendant were not paid for all hours worked, including but not limited to overtime for alleged "donning and doffing" time, time not compensated based on alleged improper rounding, and other allegedly uncompensated time in violation of the FLSA and the OMFWSA.[3] Defendant denied and continues to deny these claims.[4]

## II.     The Settlement Agreement

The parties reached a settlement upon stated terms and conditions, which are set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement"), that resolves all claims that were or could have been asserted in the lawsuit (the "Settlement").[5] Based on its extensive investigation, Plaintiff's counsel ("Class Counsel") is of the opinion that the terms set forth in the Settlement Agreement are fair, reasonable, adequate, and in the best interests of the class in light of the risk of significant delay, costs, and uncertainty associated with litigation, including Defendant's defense(s).[6] This Court agrees.

The Settlement Agreement provides that Defendant will create a total settlement fund of $470,000.00 ("Settlement Fund") to resolve this lawsuit.[7] The parties agree that a settlement class should be certified as a Federal Rule of Civil Procedure 23 class, defined as follows:

> All current and former protective services officers of OhioHealth Corporation at any of its locations beginning November 10, 2017 to March 21, 2022, who worked forty (40) or more hours in at least one (1) workweek ("Class Members").[8]

---

[3] Compl., ECF No. 1, at PAGEID # 3–5; Joint Mot. for Prelim. Approval, ECF No. 60, at PAGEID # 443-444.
[4] Joint Mot. for Prelim. Approval, ECF No. 60, at PAGEID # 444.
[5] Settlement Agreement, ECF No. 60-1, at PAGEID # 475.
[6] Declaration of Adam C. Gedling (hereinafter "Gedling Decl."), ECF No. 60-2, ¶ 28.
[7] Settlement Agreement, ECF No. 60-1, ¶ 28, at PAGEID # 472; Gedling Decl., ECF No. 60-2, ¶ 20.
[8] Settlement Agreement, ECF No. 60-1, ¶ 7, at PAGEID # 469; Gedling Decl., ECF No. 60-2, ¶¶ 12-13.

The Settlement Fund will provide the Class Members with their pro rata share of damages resulting from Plaintiff's claims based on each Class Member's calculated overtime rounding damages for every workweek they were employed by Defendant during the period of November 10, 2017 to March 21, 2022.[9] For the Class Members whose damages do not exceed $5.00, they will receive a minimum payment of $5.00.[10] The Settlement Fund reflects the value of approximately 85% of the Class Members' alleged overtime rounding damages during the period of November 10, 2017 to March 21, 2022.[11]

Class Members who do not opt out of the Settlement but also do not timely return a signed Consent and Release Form will receive 50% of their calculated individual payment, which will be paid as unpaid wages.[12] Class Members who do not opt out of the Settlement but do return a signed Consent and Release Form ("Opt-In Plaintiffs") will receive 100% of their calculated individual payment, and the additional 50% will be paid as liquidated damages.[13] Instead of reverting back to Defendant, the unclaimed damages resulting from individuals who opt-out of the Rule 23 Settlement or who do not join the FLSA Settlement will be redistributed to the Class Members or Opt-In Plaintiffs respectively on a pro rata basis based on the formula used to calculate the individual payments.[14]

In addition, the Class Members as well as future employees will receive further relief because Defendant has revised certain policies and practices related to timekeeping that will ensure

---

[9] Settlement Agreement, ECF No. 60-1, ¶ 29, at PAGEID # 473; Joint Mot. for Prelim. Approval, ECF No. 60, at PAGEID # 445-446; Gedling Decl., ECF No. 60-2, ¶ 23.
[10] Settlement Agreement, ECF No. 60-1, ¶ 29, at PAGEID # 473
[11] Joint Mot. for Prelim. Approval, ECF No. 60, at PAGEID # 446.
[12] *Id*.
[13] *Id*.
[14] *Id*.

compliance with the FLSA and Ohio's wage and hour laws.[15] The Settlement Fund also provides for the following distributions: attorneys' fees, costs and expenses, and service awards in the amount of $7,500 to Representative Plaintiff, $1,500 to Opt-In Plaintiff Keith Breeckner, and $1,500 to Opt-In Plaintiff Colt Moore.[16]

In exchange for the individual settlement payments, Representative Plaintiff, Opt-In Plaintiffs, and the Class Members will release their wage and hour claims asserted in this lawsuit and be mailed their proportionate share of the Settlement Fund by the settlement administrator ("Settlement Administrator").[17] Specifically, all Opt-In Plaintiffs who timely return the Consent and Release Form will waive their claims under the federal and Ohio wage and hour laws, and Class Members who do not timely return a signed Consent and Release Form will only waive their claims under the Ohio wage and hour laws.[18]

### III. Relevant Procedure Background Following Preliminary Approval

On May 4, 2023, this Court entered an Order granting provisional certification of the Rule 23 class, granting preliminary approval of the Settlement, and authorizing notice to the provisionally certified class members.[19] Thus, the Court preliminarily (1) approved of the Settlement under Rule 23(e); (2) granted certification pursuant to Rule 23(a) and (b)(3) of a settlement class consisting of the Class Members; (3) appointed Attorneys Matthew Coffman, Adam Gedling, and Kelsie Hendren of Coffman Legal, LLC as Class Counsel; (4) appointed Dane Melgard as class representative; (5) approved Analytics Consulting, LLC ("Analytics") as the Settlement Administrator; and (6) approved of the settlement procedure and timeline as set forth

---

[15] Joint Mot. For Prelim. Approval, ECF No. 60, at PAGEID # 445.
[16] Settlement Agreement, ECF No. 60-1, ¶ 32, at PAGEID # 473.
[17] *Id.*, ¶ 28, at PAGEID # 472.
[18] *Id.*
[19] Opinion and Order, ECF No. 61 ("Preliminary Order").

in the Preliminary Order.[20]

Since the Court entered the Preliminary Order, the notice process was properly effectuated. On May 19, 2023, Analytics sent the approved "Notice of Settlement of Lawsuit" ("Notice") to the Class Members, consisting of a total of 368 Class Members, pursuant to the settlement procedure and timeline approved by the Court.[21] During the 60-day notice period, Analytics received 29 returned notices without forwarding addresses, Analytics conducted a skip trace in an attempt to ascertain a valid address for the affected Class Members, Analytics identified new addresses for 26 affected Class Members, and Analytics subsequently processed a re-mail of the Notice to each of the affected Class Members.[22] Accordingly, 365 out of the 368 Class Members, or 99.2%, received the Notice.

The deadline to request exclusion or otherwise object to the Settlement was August 21, 2023. As indicated in the parties' Joint Motion for Final Approval, only three (3) Class Members requested to be excluded, and no Class Members objected to the Settlement.[23] Thus, 99.2% of the Class Members will be included in the Settlement.

In addition, 112 of the 368 certified Class Members returned a signed consent form to join the FLSA settlement and will receive the liquidated damages payment.[24]

Therefore, as more fully explained below, I find that the parties' Settlement is fair and reasonable.

---

[20] Preliminary Order, ECF No. 61.
[21] Joint Motion for Final Approval, ECF No. 63, at PAGEID # 639-640.
[22] Declaration of Settlement Administrator ("Claims Administrator Decl."), ECF 63-1, ¶ 11.
[23] Joint Mot. for Final Approval, ECF No. 63, at PAGEID # 640.
[24] *Id.*

## IV. Analysis

### A. The Factors Support Approval of the Settlement

Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *1 (S.D. Ohio May 24, 2013) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Id.* (citing *UAW*, 497 F.3d at 631). In reviewing a proposed class action settlement, the district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992.)). As set forth below, the Settlement meets the standard for final settlement approval as to each factor.

#### 1. The Risk of Fraud or Collusion

Courts presume the absence of fraud or collusion unless there is evidence to the contrary. *Wright*, 2018 WL 3966253, at *3 (quoting *Granada Invs., Inc.*, 962 F.2d at 1205–06). The evidence before the Court clearly reflects that the Settlement is the product of arms-length negotiations conducted by experienced counsel on both sides. As such, nothing before the Court suggests that the Settlement is the result of fraud or collusion. This factor weighs in favor of approval.

    2.   The Complexity, Expense, and Likely Duration of Continued Litigation

From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them. *Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342, at *5 (S.D. Ohio Sept. 25, 2020). This case was no exception.

This lawsuit involved complex issues of fact, and this factor weighs in favor of approval of the Settlement. *Wright*, 2018 WL 3966253, at *3–4.

    3.   The Amount of Discovery Engaged in by the Parties

To confirm that Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *Wright*, 2018 WL 3966253, at *4 (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006)).

The Court finds that the parties engaged in substantial investigation. The parties exchanged relevant information, including payroll and timekeeping records for all Class Members from Defendant in order for an economist to construct a proper damages model.[25] In addition, the legal issues were thoroughly researched and debated by the parties and thus the value of the claims were properly assessed.[26] As a result, the Court finds that this exchange of information properly informed the parties' negotiations.

    4.   The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from

---

[25] Joint Mot. for Prelim. Approval, ECF No. 60, at PAGEID # 444.
[26] Joint Mot. for Prelim. Approval, ECF No. 60, at PAGEID # 456.

which the benefits of the settlement must be measured." *Wright*, 2018 WL 3966253, at *4 (further citation omitted); *see Mitchell v. Independent Home Care*, No. 2:17-CV-717, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019).

The Court observes that counsel for both sides believe in the merits of their respective positions and have vigorously represented their clients' interests throughout the litigation but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result.

Absent settlement, the parties would have engaged in significant discovery, and other motion practice. Further, even if Plaintiff prevailed on the merits, any recovery could be significantly curtailed if a jury concluded that Defendant acted in good faith and Plaintiff failed to establish a willful violation of the law, moreover, an appeal could follow.

On the other hand, Defendant faces the prospect of class-wide liability to 368 current and former officers as well as liquidated damages and attorneys' fees following lengthy and expensive litigation. But the Settlement eliminates these risks, and participating Class Members are guaranteed to receive significant recovery now rather than possibly receiving a recovery years from now (or not ever receiving any recovery). *See Satterly*, 2020 WL 6536342, at *6.

Therefore, the Court finds that these considerations all weigh in favor of approval.

        5.       The Opinions of Class Counsel and the Class Representative

The recommendation of Class Counsel, skilled in collective and class actions, is that the Court should approve the settlement and defer to Class Counsel's judgment. *Satterly*, 2020 WL 6536342, at *6; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.").

In this case, Representative Plaintiff approves of the Settlement.[27] In addition, Class Counsel is of the opinion that the Settlement is a fair, reasonable, and adequate resolution of this litigation.[28] Class Counsel is experienced in wage-and-hour class and collective actions, has acted in good faith, and has represented its clients' best interests in reaching this Settlement.[29] The Court finds that Class Counsel is well-versed with wage and hour claims. The Court further observes that Class Counsel has achieved an excellent result on behalf of Representative Plaintiff and the Class Members. Therefore, the Court finds that this factor weighs in favor of approving the Settlement.

### 6. The Reaction of Absent Class Members

The Court must also consider the reaction of the absent class members. *Wright*, 2018 WL 3966253, at *5 (internal citations omitted). As indicated above, the Class Members' reactions support approval. Only three (3) Class Members requested exclusion from the Settlement and no Class Members objected to the Settlement. As noted above, the inclusion rate of over 99% is exceptional.

### 7. The Public Interest

The public interest favors the settlement of class action litigation. *Wright*, 2018 WL 3966253, at *5. This finding is especially true in cases involving wage and hour claims, which inherently implicate the public interest. *Harsh v. Kalida Mfg.*, No. 3:18-cv-2239, 2021 WL 4145720, at *7 (N.D. Ohio Sept. 13, 2021). The Settlement provides relief to the Class Members, avoids further litigation in a complex case, and frees the Court of expending further judicial resources. Accordingly, the Court finds that this factor weighs in favor of approval.

---

[27] Settlement Agreement, ECF No. 60-1, at PAGEID # 471.
[28] Gedling Decl., ECF No. 60-2, ¶ 28.
[29] Gedling Decl., ECF No. 60-2, ¶¶ 7-19.

        8.      <u>Overall Settlement Terms</u>

In evaluating the fairness of a class settlement, a court should also ensure that the distribution of settlement proceeds is equitable. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *8 (S.D. Ohio May 30, 2012) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). Equity does not dictate that the proceeds must be shared on a pro rata basis so long as the ultimate distribution is fair, reasonable, and adequate. *Id.* (internal citations omitted). However, a pro rata share based upon their calculated damages ensures an equitable distribution of settlement proceeds because it is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds. *Harsh*, 2021 WL 4145720, at *7.

The Court thus finds that the division of the Settlement Fund on a pro rata basis ensures an equitable distribution that is directly tied to the claims and harms allegedly suffered by the Class Members and will provide them with a proportionate share of the Settlement.

        (a)      *The Individual Payments Are Reasonable and Adequate.*

With respect to the settlement payments to the Class Members, the Court finds that the individual payments are reasonable. Class Members who did not opt out of the settlement will receive a minimum payment of $5.00 even if they suffered zero damages. The Settlement Fund and individual settlement payments represent a reasonable and adequate resolution of the Class Members' overtime claims.

        (b)      *Representative Plaintiff's Service Award Is Reasonable.*

The Sixth Circuit declared that "numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Satterly*, 2020 WL 6536342, at *8 (citing *Hadix v.*

*Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Wright*, 2018 WL 3966253, at *7 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010)) (internal quotation marks and citations omitted). Service awards to representative plaintiffs "are common in class action settlement and routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Satterly*, 2020 WL 6536342, at *8 (quoting *Kritzer*, 2012 WL 1945144, at *8).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re S. Ohio Correctional Facility*, 175 F.R.D. 270, 273–76 (S.D. Ohio 1997). Such awards are common in class action settlements and routinely approved for this simple reason: "to compensate [plaintiffs] for the services they provided and the risks they incurred during the course of the class action litigation." *Kritzer*, 2012 WL 1945144, at *8–9.

In the present case, the parties agreed to a service award of $7,500 for Representative Plaintiff and service awards to Opt-In Plaintiffs Keith Breeckner and Colt Moore of $1,500 each. The Court finds that the service payments are reasonable and approves the amounts sought, particularly given their respective efforts in this case as well as the fact that the proposed service awards set forth in the Settlement Agreement are within the range awarded in wage and hour actions before this Court. *See, e.g.*, *Satterly*, 2020 WL 6536342, at *8–9 (S.D. Ohio Sept. 25, 2020) (approving a service award of $10,000 to the named plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No.

1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (approving a $10,000 service award for each named plaintiff).

Therefore, given that all of the factors weigh in favor of approval, the Court **GRANTS** the Joint Motion for Final Approval.

  **B.**  <u>**Plaintiff's Attorneys' Fees and Reimbursement of Costs Are Reasonable and Appropriate.**</u>

    1.  <u>Class Counsel Is Entitled to the Requested Fee.</u>

As this Court has declared, "when awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Satterly*, 2020 WL 6536342, at *9; *see also Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011) (internal citations omitted) ("[A]bsent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved."). Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h).

Class Counsel asks the Court to approve an attorneys' fees award of one-third of the Settlement Fund: $156,666.67.[30] Defendant does not object to the requested fee award. Moreover, no Class Member has objected to this fee. The Court notes that Plaintiff's successful pursuit of this action supports the requested fee award. *Satterly*, 2020 WL 6536342, at *9.

    (a)  *The Court Adopts the "Percentage of the Fund" Approach.*

District courts in the Sixth Circuit have approved the use of the percentage-of-the-fund

---

[30] Settlement Agreement, ECF No. 60-1, ¶ 33, at PAGEID # 473.

method to determine a reasonable attorney's fee from a common fund settlement. *See, e.g.*, *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *4 (S.D. Ohio Sept. 20, 2019) (further citation omitted) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (stating that the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"). Indeed, "[a]bsent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects [the] FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246, at *5 (S.D. Ohio Feb. 16, 2021).

This Court has regularly approved attorneys' fees of 1/3 of the settlement fund in wage and hour cases. *See, e.g.*, *O'Neil v. Miller Pipeline, LLC*, No. 2:20-cv-4034, 2021 WL 5376235, at *2 (S.D. Ohio Nov. 2, 2021) (finding attorneys' fees representing approximately one-third of the total settlement fund as reasonable); *Croskey v. Hogan Servs., Inc.*, No. 2:20-cv-3062, 2021 WL 3012278, at *2 (S.D. Ohio July 15, 2021) (further citation omitted) ("[A]ttorneys' fees . . . represent[ing] one-third of the total settlement amount . . . are reasonable."); *Satterly*, 2020 WL 6536342, at *10 (collecting cases) ("Federal jurisprudence within the Sixth Circuit, including this Court, hold that 1/3 of the settlement fund is a 'normal fee amount in a wage and hour case.'"); *Campbell v. Wise Med. Staffing, Inc.*, No. 2:18-CV-493, 2020 WL 9259704, at *2 (S.D. Ohio Feb. 21, 2020) ("The Court . . . finds that one-third of the Settlement Fund is a reasonable percentage of the fund to be awarded for attorney's fees.").

Here, Class Counsel requests an award of one-third of the Settlement Fund for attorneys' fees. This fee amount is normal in common fund settlements in wage and hour cases. The Court

will not deviate from the norm here. The Court finds that Class Counsel's request for a one-third fee is reasonable and **GRANTS** Class Counsel's fee request.

    2.   <u>Class Counsel Is Entitled to Reimbursement of Costs and Expenses.</u>

Class Counsel is also entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and obtaining settlement. *Satterly*, 2020 WL 6536342, at *11. Expense awards are customary when litigants have created a common settlement fund for the benefit of a class. *Id.* (internal citations omitted).

Here, Class Counsel requests reimbursement of $10,121.01 in costs/expenses that have been incurred prosecuting this lawsuit.[31]

The Settlement also provides that settlement administration costs will be deducted from the Settlement Fund. The Settlement Administrator's fees are $13,233.00.[32]

The Court finds these expenses to be reasonable and necessary in connection with litigating and resolving this Action. Defendant does not dispute that the costs are reasonable and reimbursable. The Court **GRANTS** Class Counsel's request for expense reimbursement of $10,121.01 as well as payment of the Settlement Administrator's fees of $13,233.00.

**V.**  **Conclusion**

Based on the foregoing, the parties' Joint Motion for Final Approval is **GRANTED**. Accordingly, the Court finds as follows:

  1.  Pursuant to Federal Rule of Civil Procedure 23(e)(2) and 29 U.S.C. § 216(b), the Court finds after a hearing and based on the parties' submissions, the Settlement Agreement is fair, reasonable, and adequate. In reaching this conclusion, the Court considered the record in its entirety and heard the arguments of counsel for the parties. In addition, the Court has considered a number of factors, including: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Class Members to the Settlement; (3) the stage of proceedings and

---

[31] Settlement Agreement, ECF No. 60-1, ¶ 33, at PAGEID # 473.
[32] Settlement Agreement, ECF No. 60-1, ¶ 27(f), at PAGEID # 472.

<ol start="1">
<li>the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of maintaining the class action through the trial; and (6) the reasonableness of monetary benefits to the Class Members;</li>
<li>The terms and provisions of the Settlement are the product of thorough, arms-length negotiations among experienced and competent counsel. Approval of the Settlement will result in substantial savings of time, money, and effort to the Court and the parties and will further the interests of justice;</li>
<li>All Class Members are bound by this Judgment and by the terms of the Settlement;</li>
<li>Nothing in the Settlement Agreement, this Judgment, or the fact of the settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Action;</li>
<li>The Court has considered the submissions by the parties and all other relevant factors, including the results achieved and the efforts of Class Counsel in prosecuting the claims on behalf of the Class Members. Representative Plaintiff participated in the Action, acted to protect the Class Members, and assisted his counsel. The efforts of Class Counsel have produced the Settlement entered into with good faith, providing a fair, reasonable, adequate, and certain result for the Class Members. Class Counsel have made application for an award of $156,666.67 in attorneys' fees, $10,121.01 in expenses incurred in the prosecution of the Action on behalf of themselves and the Class Members, and $13,233.00 to be paid to the Settlement Administrator for administering the Settlement. The Court finds the amounts requested for fees and expenses to be fair, reasonable, and adequate under the circumstances. The Court hereby awards $156,666.67 as attorneys' fees and $10,121.01 as expenses to Class Counsel. Analytics shall also be paid $13,233.00 for its services in administering this Settlement. Further, pursuant to the Settlement Agreement and to be paid from the Settlement Fund as a fair, reasonable, and justified service awards, Representative Plaintiff is entitled $7,500 and Opt-In Plaintiffs Keith Breeckner and Colt Moore are entitled to $1,500 each;</li>
<li>This Action is dismissed with prejudice;</li>
<li>Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement Agreement and all matters ancillary thereto.</li>
</ol>

**IT IS SO ORDERED.**

s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**